**JANET B. WATLINGTON, Plaintiff**

v.

**ROY CANTON, Defendant**

Family No. S30/1981

**JANET B. CANTON, Plaintiff**

v.

**ROY CANTON, Defendant**

Family No. D335/1981

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 10, 1982

Mario A. Bryan, Esq., St. Thomas, V.I., *for plaintiff*

Arnold M. Selke, Esq., St. Thomas, V.I., *for defendant*

Feuerzeig, *Judge*

## MEMORANDUM OPINION

A father's failure to make court ordered child support payments for 12 years and the mother's failure to enforce the order, once again

requires the court to become enmeshed in familial problems. Specifically, the court must determine (a) whether a parent may be barred by a statute of limitations from collecting 12 years of support arrearages; (b) whether laches may bar a parent from collecting arrears; (c) whether interest may be assessed on support arrearages, and (d) whether the court may retrospectively reduce support arrearages.

On May 9, 1969, the District Court of the Virgin Islands, in Civil No. 108/1969, entered a divorce decree and awarded custody of the parties' minor child, Gregory Canton, to the plaintiff-mother and directed the defendant-father to pay $15 per week in child support.

After the divorce, the plaintiff moved with the parties' child to Washington, D.C. In a series of letters and telephone calls, the parties intermittently discussed the possibility of the defendant transferring his interest in the jointly owned marital home to their son. As a result of the correspondence and discussions, the plaintiff was lulled into the belief that the defendant would, in fact, transfer his interest. Consequently, she did not attempt to enforce defendant's payment of support. It was not until sometime in 1976 or 1977 that the plaintiff ultimately realized that defendant had other plans for his interest in the house. This occurred after the defendant approached the plaintiff's attorney to request that the plaintiff transfer her interest to enable him to use the house as collateral for a business venture.

On January 14, 1979, Gregory turned 18, and plaintiff on August 7, 1979, instituted an action for partition. That action still is pending before this court, Civil No. 513-1979 (Christian, J. presiding). On February 20, 1981, the plaintiff instituted the Family No. S30/1981 for more than $8,000 in child support arrearages.[1] It is undisputed that the defendant has failed to make any support payments.

Since 1969 and the divorce decree, the defendant's income has increased minimally. In 1969, he earned approximately $4,500, while in 1981 he earned $10,000, his highest income to date. Plaintiff's income, on the other hand, has soared since the divorce. In 1969, at the time of the divorce, she earned $8,000. Her income

---

[1] The District Court case, Civil No. 108/1969, was transferred to this court by order dated October 2, 1981, and was assigned Family No. D335/81. It is in that action that the defendant seeks a modification of his support obligation under the initial decree. That case was consolidated with Family No. S30/81 in which the plaintiff, formerly known as Janet Canton, seeks enforcement of the divorce decree's child support provisions.

jumped to $32,365.25 in 1973 and has increased steadily thereafter to approximately $47,500.

## Statute of Limitations

Plaintiff asks this court to grant her $8,580 in arrears from 1969 to 1979.[2] She contends that each support payment was a judgment as it became due and that pursuant to 5 V.I.C. § 31(1)(B) (1967),[3] the applicable limitation period is 20 years. The defendant, however, argues that the support payments are not judgments and that even if they were judgments, the plaintiff must comply with the provisions of 5 V.I.C. § 488 (1967) regarding execution on judgments that are more than five years old.

It has been held in this jurisdiction that arrearages in support payments accruing under a court order are in the nature of a judgment debt. Muriel v. Muriel, Civil No. 74-185 (D.V.I., Div. St. Thomas and St. John, June 10, 1975) (citing Sistare v. Sistare, 218 U.S. 1, 16 (1910), and Kephart v. Kephart, 193 F.2d 677 (D.C. Cir. 1951, cert. den. 342 U.S. 944 (1952)). This is consistent with the rule applied in many jurisdictions that each installment payment for support that comes due under a decree constitutes a separate and final judgment. The statute of limitations under those circumstances, therefore, becomes applicable and begins to run as to each installment from the date it is due. E.g., Strecker v. Wilkinson, 220 Kan. 292, 552 P.2d 979, 983 (1976); see Annot., 70 A.L.R.2d 1250, 1255 (1960). The court believes that this is a sound rule which, in accordance with 1 V.I.C. § 4 (1967), should be adopted in the Virgin Islands.[4]

---

[2] After Gregory turned 18 on January 14, 1979, the defendant was no longer under a legal obligation to support his son. 16 V.I.C. § 342 (1964).

[3] § 31. *Time for commencement of various actions*

Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute:

(1) *Twenty years—*

. . .

(B) An action upon a judgment or decree of any court of the United States, or of any State, Commonwealth or Territory, within the United States.

[4] 1 V.I.C. § 4 provides:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

This court is aware of no Virgin Islands case dealing with the issue. Muriel dealt with the applicability of the doctrine of laches and not a statute of limita-

■ Consequently, whether this action is viewed as a suit on the original decree of 1969 or on each installment as it has become due since the entry of the decree, plaintiff's suit is an action upon a judgment. As such, it clearly falls within 5 V.I.C. § 31(1)(B), which provides for a limitation of 20 years for an action upon a judgment. Plaintiff's action being one for support arrearages dating back to May of 1969, therefore, is not barred by the statute of limitations.

Furthermore, 5 V.I.C. § 488 cannot be applied to bar this action. Section 488 provides that after five years have elapsed since entry of a judgment, no writ of execution may issue except when the party in whose favor the judgment was given has filed a motion for a writ. Because this court holds that installment payments are judgments, and because the court knows of no other reported decision in the Virgin Islands that has made a similar holding, it would be ludicrous to assume plaintiff possessed previous knowledge that installment payments were judgments, thus requiring the filing of a motion for a writ. More importantly, the plaintiff here is seeking a lump sum judgment from which lawful execution then could be obtained. She is not in this action seeking an execution upon a judgment. See Roach v. Roach, 164 Ohio St. 587, 132 N.E.2d 472 (1956) (holding the unpaid and delinquent installments of an installment support order must be reduced to a "lump sum judgment" before a lawful execution can be levied).[5]

### Laches

The defendant also alleges that plaintiff's action is barred by the doctrine of laches because he has been prejudiced by plaintiff's delay in seeking the arrears. He claims that had the plaintiff pressed him for child support payments he would not have added three children to his responsibilities, would have been more aggres-

---

tions. Moreover, Muriel concerned the applicability of District of Columbia Law, which has a similar rule. Brandt v. Brandt, 276 F.2d 488, 490 (D.C. Cir. 1960). The Restatements of Law also do not address this issue. Consequently, this court must, pursuant to 1 V.I.C. § 4, look to other sources of the common law "as generally understood and applied in the United States."

[5] The defendant also relies on 16 V.I.C. § 298 (1964), which provides that if default is made in payments toward the support of an illegitimate child, a writ of execution may be issued, but execution shall not issue "except for payment due within the 12 months next preceding the issuance of the execution." Defendant concedes that this statute applies only to illegitimate children, but argues that by analogy it should apply to legitimate children. This court, however, is not disposed to broaden the reach of 16 V.I.C. § 298 to legitimate children. Moreover, since this case does not concern an illegitimate child, the court has no reason to consider whether, in view of this court's holding, § 298 is constitutionally infirm.

sive in his career, would have sought a higher salary, and would have made provision for child support. Plaintiff, on the other hand, alleges that her delay was justified and that the defendant has not been materially prejudiced by her delay.

 Laches is an equitable doctrine that denies relief to a party whose undue delay in asserting rights prejudices the adverse party. Muriel; Smith v. Smith, 168 Ohio St. 447, 256 N.E.2d 113 (1959). In determining the applicability of laches, a court must look to the special circumstances of each case. Strecker, supra. While laches may be invoked as a defense to a claim for support arrearages, e.g. Muriel; Gills v. Gills, 8 Ill. App. 3d 625, 290 N.E.2d 897 (1972); see Annot. 70 A.L.R.2d supra at 1269, exceptional circumstances must be shown to bar a claim, Armour v. Allen, 377 So.2d 798 (Fla. Dist. Ct. App. 1979). In addition, the party alleging laches must establish that he has been materially prejudiced, Scheibel v. Scheibel, 604 Neb. 653, 284 N.W.2d 572 (1979); Smith, and that the delay is unexplained, Pukas v. Pukas, 247 A.2d 427 (R.I. 1968).

██ The court believes that laches constitutes a bar to part, but not all, of the plaintiff's claim. Between 1969 and 1977, the plaintiff was lulled into the belief that the defendant would, in fact, transfer his interest in their house to their son. For that period, therefore, she has a legitimate explanation for not taking action to enforce the support payments. This is in contrast to the defendant's claims of prejudice, which are questionable. It would be farcical for the court to find the defendant was materially prejudiced because he had grown in the belief that he had escaped his obligation of child support while causing the plaintiff to believe he would transfer his interest in the parties' house to Gregory. See Cullinan v. Cullinan, 226 N.W.2d 33 (Iowa 1975).

██ From 1977 to 1979, though, the plaintiff has not provided the court with any acceptable explanation for her inaction. At least by January 31, 1977, the plaintiff knew the defendant was not going to transfer his interest in the parties' house to their son, but it was not until 1981 that she finally sought to recover the arrears. The court can find no justifiable reason for this delay, and will not grant plaintiff support arrearages for January 1977 to 1979. Consequently, plaintiff will be permitted to recover support payments from May 16, 1969, until January 31, 1977.[6]

---

[6] May 16, 1969, is the date that the first support payment was due. Unfortunately, the evidence does not enable the court to pinpoint the time that the plaintiff was

## Interest on Child Support Arrearages

Plaintiff also claims that she is entitled to interest on all the arrears from the date each installment became due. Defendant contends that the divorce decree did not provide for interest and, therefore, interest could not have accrued. In the alternative, defendant claims that any interest due should be post-judgment pursuant to 5 V.I.C. § 426 (1981 Supp.). The court believes that plaintiff's claim is both sound and logical.

By analogy, a majority of courts have held that a party possesses a right to interest on unpaid installments of alimony as the installments become due. The rationale behind this holding has been that the installments are in the nature of separate judgments, which bear interest as they become due. E.g., Shannon v. Shannon, 238 P.2d 744 (Or. 1981); Annot., 33 A.L.R.2d 1455 (1954). The court believes that there is no rational basis for drawing a distinction between unpaid alimony and unpaid installments of child support. Moreover, to permit a party to avoid child support payment without interest in a spiraling inflationary economy is to further encourage recalcitrance on the part of parents who have a duty of support.[7]

The court, however, will apply this holding—allowing interest on support arrears—prospectively. See Government v. Bay Corp., 13 V.I. 287 (D.V.I. 1976). Because defendant was not put on notice that interest would be assessed on arrears, the court believes it would be inequitable to assess interest here. From this ruling forward, though, the court will assess interest on support arrears.

## Retrospective Reduction of Arrears

Finally, the defendant asks this court retrospectively to reduce his child support obligation. As a basis for this request, defendant states

---

informed by the defendant's lawyer that the defendant wanted to use the house as collateral and wanted her to transfer her interest. The testimony indicates this conversation took place in 1976 or 1977, more likely in 1977. For lack of better evidence, the court feels compelled to select arbitrarily a cut-off date, and will choose January 31, 1977, as the date that more clearly comports with the evidence.

[7] Since each child support payment is a judgment as it becomes due, the interest would have to be considered post-judgment and the plaintiff is entitled to it pursuant to 5 V.I.C. § 426. Even if the court were to adopt the approach of Ohio as expressed in Roach, and require a lump-sum judgment before execution and, by analogy, the availability of interest, for the reasons already expressed, the court believes prejudgment interest under 11 V.I.C. § 951 (1981 Supp.) would be appropriate. Cf. Trocki v. Mendoza, 15 V.I. 256 (Terr. Ct. 1978).

that plaintiff's income has greatly increased since the divorce while his income has stayed virtually the same.

■ In Emanuel v. Emanuel, 15 V.I. 103 (D.V.I. 1978), it was held that a Virgin Islands court may retrospectively reduce child support obligations. In so holding, though, the court emphasized that such a reduction should be granted only when the court finds it equitable to adjust the responsibilities of the divorced parties brought about by substantial changes in circumstances that follow the divorce. Furthermore, the court said the discretionary power to cancel arrearages should be exercised cautiously. Id. 15 V.I. at 126.[8]

■ Upon examining each parties' situation, the court does not find that substantial changes in circumstances have occurred since the divorce that would justify a modification of the defendant's support obligation. From 1969 to 1973, it appears that plaintiff's income was approximately twice as much as the defendant's. In 1973, plaintiff's income increased dramatically from approximately $11,000 to $32,365, and it has increased steadily thereafter. Plaintiff was thus financially able and did, in fact, send their son to private schools, enroll him in piano lessons and summer day camps, and give him many other benefits of her financial success. Defendant's income, on the other hand, never increased to beyond $10,000 per year. Consequently, beginning in 1973, the defendant may have had a justifiable basis for asking the court to modify his support obligations but he did not, presumably because he was making no payments whatsoever. The court's decision to make its ruling prospective with respect to interest on support arrears, to a certain extent off-sets any reduction to which the defendant might be entitled. To grant defendant a reduction and not require interest on those payments that were due would be inequitable. More importantly, though, is the fact that the defendant, while having his income more than dou-

---

[8] Having previously held that each installment payment as it becomes due constitutes a judgment from the date it was due, the court is aware of the apparent inconsistency in that holding and the holding of Emanuel that a support obligation may be retrospectively modified. In fact, many courts have held each installment payment to constitute a judgment and that as such they are orders that may not be modified after they become due. E.g., Brandt. Emanuel, however, was based on the language of 16 V.I.C. § 110 (1981 Supp.), and the court's view that this section gives the Virgin Islands courts the power to make retrospective modifications. This court believes that the holding here and in Emanuel are reconcilable. A party will be permitted to recover arrears for any support installment as it matures. This will be possible as long as no modification of the order has been rendered before the court issues a writ of execution and as long as the writ is issued in compliance with 5 V.I.C. § 488.

ble since his divorce, has not had any increase in his support obligations for Gregory since 1969. One need not wonder too long at the worth of $15 a week today compared to $15 a week in 1969. In addition, evidence produced by the plaintiff demonstrated that from 1968 to 1979, she spent some $92,000 to support the parties' minor child, of that $22,000 went for education alone. Payments of $15 a week, which amounts to no more than $780 a year, constitutes only a minimal contribution for the support of a growing boy. As a result, the defendant's motion to modify will be denied.

### Conclusion

The above holdings of the court are founded on the basic premise that parents are obligated to support their children until they attain the age of majority. Modern times, unfortunately, have seen the breakdown of the family unit and the avoidance by far too many mothers and fathers of their parental obligations. By strictly enforcing Virgin Islands child support laws, the court is attempting to make it more and more difficult for a parent to avoid child support obligations. By so doing, the court hopes to prevent children from suffering any more than is absolutely necessary by the breakdown of a marriage or the absence of a father or mother from a home.

### JUDGMENT

In accordance with the court's Memorandum Opinion issued this date, it is

ORDERED that defendant's motion to modify the divorce decree in Family No. D335/81 is denied, and it is further

ORDERED that judgment is rendered in behalf of the plaintiff against the defendant for arrears in support payments from May 16, 1969, through January 31, 1977, in the amount of $6,015.00, and it is further

ORDERED that each side shall bear his or her costs and attorney's fees.